IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| STEVEN D.[1], | § |
| | § |
|    Plaintiff, | § |
| | § |
| v. | §    Civil Action No. 6:22-CV-00023-BU |
| | § |
| KILOLO KIJAKAZI, | § |
| Acting Commissioner of Social Security, | § |
| | § |
|    Defendant. | § |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Steven D. seeks judicial review of a final adverse decision of the Commissioner of Social Security (the Commissioner) under 42 U.S.C. § 405(g). Dkt. No. 1. Senior United States District Judge Sam R. Cummings transferred this case to the undersigned with a designation to exercise the district court's full jurisdiction and conduct all proceedings in this case upon the consent of the parties. *See* Dkt. No. 5. Because the parties have not consented to proceed before a magistrate judge, the undersigned submits these Findings, Conclusions, and Recommendation.

For the reasons explained below, the undersigned recommends that the Court affirm the Commissioner's decision.

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

I. BACKGROUND

Plaintiff alleges a disability that began on September 4, 2019, and originated because of a history of seizures, which have also resulted in memory loss and depression. *See* Administrative Record, Dkt. No. 16-1 (Tr.) at 16, 19. After his application for disability insurance benefits and supplemental security income under Title II of the Social Security Act was denied initially and on reconsideration, Plaintiff challenged the denial and requested a hearing before an Administrative Law Judge (ALJ). Tr. at 16. The ALJ held a hearing on June 29, 2021, where Plaintiff appeared with counsel. Tr. at 55.

Plaintiff was born on December 5, 1985. Tr. at 205. He completed high school and attended junior college, but did not complete the program. Tr. at 61–62. Prior to the onset of his alleged disability, Plaintiff worked as a collection clerk and as a meat clerk. Tr. at 62–63.

The ALJ determined that Plaintiff was not disabled and therefore not entitled to disability benefits. Tr. at 29. At step one of the ALJ's analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his onset date of September 4, 2019. Tr. at 18. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "atypical absence seizures, memory loss, and depression." Tr. at 19. At step three, the ALJ found that none of the Plaintiff's impairments or combination of impairments meet the severity requirements of a listed impairment listed in the Social Security regulations. Tr. at 19–21. Additionally, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work except:

> he should avoid unprotected heights, dangerous moving machinery, open flames, and large open bodies of water. He should not drive as part of the job. He is limited to the performance of simple routine tasks. He can have only occasional interaction with coworkers, supervisors, and the public. He is capable of adapting to occasional changes in the work setting.

Tr. at 21.

At step four, the ALJ concluded that Plaintiff could not perform any past relevant work. Tr. at 27–28. At step five, the ALJ reviewed the testimony of the vocational expert (VE) and considered Plaintiff's age, work experience, education level, and RFC in concluding that other work existed in the national economy that the Plaintiff could perform. Tr. at 28–29. As a result, the ALJ ultimately determined that, per the definition in the Social Security Act, Plaintiff was not disabled. Tr. at 29.

Plaintiff appealed the ALJ's findings to the Appeals Council, but the Council upheld the ALJ's decision. Tr. at 5. Plaintiff subsequently filed this action in federal district court.

## II. LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative

record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that they are disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

III.  DISCUSSION

Plaintiff challenges the ALJ's decision on four grounds: (1) the ALJ failed to properly consider whether Plaintiff's impairments satisfy the acting commissioner's requirements for presumptive disability; (2) the ALJ failed to include limitations in Plaintiff's RFC based upon all of his severe impairments; (3) the ALJ failed to give due consideration to medical opinion evidence; and (4) the ALJ relied upon jobs at step 5 which are inconsistent with Plaintiff's RFC. Dkt. Nos. 18, 21. The undersigned takes each issue in turn.

A. <u>The ALJ properly considered whether Plaintiff's epilepsy satisfies the Commissioner's Listing requirements for presumptive disability.</u>

Plaintiff claims that the ALJ failed to properly consider whether his impairment of epilepsy satisfies the acting commissioner's requirements for presumptive disability under Listing 11.02(A) and Listing 11.02(B). Dkt. No. 18 at 10.

1. *Epilepsy as a listed impairment at step 3*

At step three of the disability analysis, the ALJ must determine whether a claimant's impairment meets or equals one of the Listings and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(iii). The Listing of Impairments in 20 C.F.R. pt. 404, subpt.P, App.1, describes "the major body systems impairments that are . . . severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. § 404.1525(a). If the claimant has an impairment that meets or equals a Listing of Appendix 1, and meets the duration requirement, the ALJ will find the claimant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

5

Social Security regulations define epilepsy as a "pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain." 20 C.F.R. pt. 404, subpt. P, App. 1, § 11.00(H)(1), 81 Fed. Reg. at 43054. "In adults, the most common potentially disabling seizure types are generalized tonic-clonic seizures and dyscognitive seizures (formerly complex partial seizures)." *Id.* For a claimant to establish that they suffer from epilepsy, the Commissioner requires the claimant to provide "one detailed description of [the] seizures from someone, preferably a medical professional, who has observed at least one of [the] typical seizures." 20 C.F.R. pt. 404, subpt. P, App. 1, § 11.00(H)(2), 81 Fed. Reg. at 43054. If the claimant experiences more than one type of seizure, a description is required for each type. *Id.*

A clamant does not establish that they have a listed impairment by showing they suffer from epilepsy. A claimant must also set forth evidence that they suffer from the type of seizures listed in 11.02(A), (B), or (C) at a specified frequency for the ALJ to find that their epilepsy is a listed impairment. Listing 11.02(A) requires proof of "[g]eneralized tonic-clonic seizures,[2] occurring at least once a month for at least 3 consecutive months," and Listing 11.02(B) requires proof of "dyscognitive seizures,[3] occurring at least once a

---

[2] "Generalized tonic-clonic seizures are characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions)." 20 C.F.R. pt. 404, subpt. P, App. 1, § 11.00(H)(1)(a), 81 Fed. Reg. at 43054. Generalized tonic-clonic seizures are also referred to as grand mal seizures. *Types of Seizures*, CTR. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/epilepsy/about/types-of-seizures.htm (last visited July 12, 2023).

[3] "Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control." 20 C.F.R. pt. 404, subpt. P, App. 1, § 11.00(H)(1)(b), 81 Fed. Reg. at 43054. Dyscognitive seizures where previously referred to as complex partial seizures. 20 C.F.R. pt. 404, subpt. P, App. 1, § 11.00(H)(1), 81 Fed. Reg. at 43054.

week for at least 3 consecutive months."[4] 20 C.F.R. pt. 404, subpt. P., app. 1, § 11.02(A)–(B), 81 Fed. Reg. at 43056.

The Plaintiff bears the burden of proof to provide and identify "medical signs, symptoms, or laboratory test results" that support all criteria of a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The criteria of the listed impairment are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (internal quotations omitted). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Ramirez v. Colvin*, No. EP-13-CV-44-MAT, 2016 WL 1299003, at *3 (W.D. Tex. Mar. 31, 2016) (quoting *Sullivan*, 493 U.S. at 530).

2. *Plaintiff's and Commissioner's Arguments*

Neither the Plaintiff nor Commissioner disputes whether the Plaintiff suffers from epilepsy. Instead, Plaintiff argues that the ALJ's finding that Plaintiff does not suffer from epileptic seizures of the frequency required under Listing 11.02 (A) and (B) is not supported by substantial evidence.

Plaintiff argues that his testimony at his hearing, his wife's testimony at the hearing, Dr. Riceh's medical source statements, and several witness statements demonstrate that he suffers from the type of seizures at the frequency required under either Listing. Plaintiff testified at his hearing that that he experiences dyscognitive seizures multiple times a day, with some of the seizures being grand mal seizures (tonic-clonic seizures). Dkt. No. 18 at

---

[4] Although a claimant may establish epilepsy as a Listed impairment under 11.02(C), Plaintiff does not assert that he satisfies the requirements of this Listing.

11; Tr. at 72. Plaintiff's wife testified that Plaintiff suffers absence (dyscognitive) seizures daily and grand mal (tonic-clonic) episodes once or twice a month. *See* Tr. at 78–79.

Plaintiff also argues that his treating physician, Dr. Richeh, "completed multiple medical source statements" that would establish seizure activity under the Listing. Dkt. No. 18 at 12. These medical source statements, taken October 27, 2020, state that Plaintiff suffers three seizures a week. *See* Administrative Record II, Dkt. No. 16-2, (Tr. II. at 78–82). Plaintiff also claims that statements from witnesses, including Sara Johnson, Maria Cadena, Mandy Laboy, and McKeena Brock, all demonstrate that he has seizures at the frequency required by the Listings. Dkt. No. 18 at 12.

Plaintiff alleges that the ALJ "failed to explain her reasons for rejecting such evidence . . . [and] erred in failing to find that he has an impairment which is presumptively disabling under the Acting Commissioner's Appendix 1." *Id.* Specifically, Plaintiff argues that the ALJ erred in finding that he suffers from a seizure disorder, but "never indicated the degree of frequency of seizure episodes which she found to exist." *Id.* at 11.

The Commissioner responds by asserting that Plaintiff did not carry his burden of proof in meeting the requirements of Listing § 11.02. Dkt. No. 20 at 3. Specifically, the Commissioner argues that the ALJ "noted that the record contained inconsistencies in the record regarding the frequency of [Plaintiff's] seizure activity." *Id.* at 5.[5] The Commissioner argues that the ALJ supported this conclusion by referencing a February 25,

---

[5] The Commissioner also argues that Plaintiff failed to show a marked limitation in physical functioning or a marked limitation in one of the four areas of mental functioning. Dkt. No. 20 at 4. Although Commissioner is correct that the ALJ did not find that Plaintiff suffers from a marked impairment, as Plaintiff notes, the requirement to show a marked limitation does not apply to Section 11.02(A) or (B). Dkt. No. 21 at 3. Accordingly, the Court does not address this argument.

2021, medical source statement that notes that Plaintiff's last seizure was in December 2019. *Id.*; Tr. II. at 84. The Commissioner also asserts that the ALJ cited statements from a nurse practitioner, who examined Plaintiff in January and February of 2020, and suspected that Plaintiff was "malingering for monetary gain due to exaggeration of history and incongruency of mood/affect." *Id.* (quoting Tr. II. at 509).

   3. *The ALJ's finding was supported by substantial evidence*

Although a claimant bears the burden of establishing whether they meet the requirements of a listed impairment, an ALJ's finding that a claimant has not satisfied their burden must be based on substantial evidence. *See, e.g.*, *Belk v. Colvin*, 648 F. App'x 452 (5th Cir. 2016).

Here, the ALJ found that the "severity of the claimant's seizures does not meet or medically equal the criteria of listing 11.02." Tr. at 19. The ALJ found that Plaintiff did not satisfy his burden of demonstrating that he meets the requirements of the Listing because "the medical evidence of record contains multiple inconsistencies regarding the claimant's frequency of seizure activity." *Id.* at 25.

The ALJ explained that Plaintiff's neurology medical source statements, from October 22, 2020, and February 25, 2021, state that Plaintiff's last seizure was in December 2019. Tr. at 25 (citing Tr. II. at 84, 118). The ALJ then utilized the record to explain why she did not find persuasive the Plaintiff's or his wife's testimony that he was experiencing daily seizures when such testimony was contradicted by the record. *Compare* Tr. at 25 *with* Tr. at 72. Additionally, the ALJ was not persuaded by the opinions of Dr. Richeh because Richeh "relied quite heavily on the subjective report of symptoms and limitations provided

9

by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." Tr. at 25. Lastly, the ALJ was not persuaded by the witness statements that Plaintiff provided. Tr. at 26. The statements from Johnson and Laboy were not persuasive because they were made before Plaintiff began treatment for his seizure disorder. *Id.* And, the statements from Cadena and Brock fail to provide when the seizures were witnessed. *Id.* The undersigned also notes that none of the witness statements include any description of the frequency of the seizures. *See* Tr. at 270, 290, 292, 293.

Accordingly, the ALJ did not fail to "explain her reasons for rejecting [Plaintiff's] [] evidence," as Plaintiff suggests. *See* Dkt. No. 18 at 12. And while the ALJ never "indicated the degree of frequency of seizure episodes which she found to exist," the ALJ had no such duty because Plaintiff bears the burden providing evidence that supports all criteria of a listed impairment. *See Sullivan*, 493 U.S. at 530. Thus, Plaintiff's failure to establish that he suffers seizures at the frequency required by Listing 11.02 is fatal to his step 3 allegations because "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *See Ramirez*, 2016 WL 1299003 at *3 (quoting *Sullivan*, 493 U.S. at 530). Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's seizures did not meet or medically equal the criteria of listing 11.02. *See Harris*, 209 F.3d at 417.

B. <u>The ALJ properly included limitations in Plaintiff's RFC for all of his severe impairments.</u>

Plaintiff claims that the ALJ found that Plaintiff had a severe impairment of memory loss, but "failed to include any deficits in recent or immediate memory into her RFC

determination . . . nor did the ALJ question the VE as to the effect of a severe impairment in recent memory and an impairment in immediate memory upon his ability to perform work-related activities." Dkt. No. 18 at 13. Plaintiff notes that Dr. Montgomery opined that Plaintiff's "ability to recall and use information to perform work tasks is likely to be significantly impaired by his deficits in recent and immediate memory." *Id.* Accordingly, Plaintiff argues that substantial evidence does not support limiting Plaintiff to "'simple and routine tasks,'" because "there is no evidence . . . that a limitation to simple and routine tasks would adequately compensate for a severe impairment in recent memory and an impairment in immediate memory." *Id.*

The Commissioner responds by stating that the ALJ accounted for Plaintiff's memory loss "by limiting him to simple, routine tasks and occasional interaction with coworkers, supervisors, and the public and occasional changes in the work setting." Dkt. No. 20 at 6.

"Although the ALJ must consider severe impairments when making an RFC determination" the ALJ "does 'not necessarily have to assess limitations for each severe impairment.'" *Jones v. Kijakazi*, 625 F. Supp. 3d 549, 552 (S.D. Miss. 2022) (internal alterations omitted) (quoting *Winston v. Berryhill*, No. 3:16-cv-419, 2017 WL 1196861, at *13 (N.D. Tex. Mar. 31, 2017)). Instead, the ALJ must "clearly consider the severe impairments in determining the claimant's RFC." *Winston*, 2017 WL 1196861 at *13.

Remand is required when the ALJ fails to consider what impact, if any, the severe impairment has in determining the Plaintiff's RFC. *Campbell v. Berryhill*, No. 3:15-CV-3913-N (BH), 2017 WL 1102797, at *12 (N.D. Tex. Feb. 24, 2017), *report and*

*recommendation adopted*, 2017 WL 1091651 (N.D. Tex. Mar. 23, 2017). In *Campbell*, the court could not determine whether the ALJ considered Plaintiff's severe impairment of deep vein thrombosis in calculating Plaintiff's RFC when the ALJ did not expressly address the impairment in determining the RFC. *Id.* The Commissioner argued that the impairment was necessarily "'accounted for'" because the ALJ limited the claimant to medium work. *Id.* However, the court rejected the Commissioner's argument because the court could not reconcile that a limitation to medium work accounted for the claimants significantly impaired use of their lower extremities. *Id.*

Here, the ALJ included limitations in the Plaintiff's RFC for Plaintiff's severe impairment of memory loss by limiting the Plaintiff to simple, routine tasks, with occasional changes in the workplace. Tr. at 21. Although the ALJ did not specifically state that Plaintiff's limitation to simple, routine tasks, and occasional changes in the workplace was made to accommodate Plaintiff's severe impairment of memory loss, the ALJ's discussion of the medical evidence as it relates to Plaintiff's memory makes clear that she considered the impact of Plaintiff's memory loss when determining Plaintiff's RFC. *See Winston*, 2017 WL 1196861 at *13.

The ALJ expressly considered Dr. Montgomery's opinion that Plaintiff's "ability to recall and use information to perform work tasks is likely to be significantly impaired by his deficits in recent and immediate memory." Tr. at 26. The ALJ also discussed Dr. Montgomery's opinion that Plaintiff "seems able to follow one and two-step oral instructions to carry out a task." *Id.* And unlike *Campbell*, there is not a clear inconsistency between Plaintiff's RFC limitation and his severe impairments. *Campbell*, 2017 WL

1102797, at *12. Specifically, a claimant's ability to perform one and two step instructions is consistent with the limitation of simple, routine work. *See Dugas v. Astrue*, No. 1:07-CV-605, 2009 WL 1780121, at *6 (E.D. Tex. June 22, 2009).

Thus, the ALJ properly accounted for Plaintiff's severe impairment of memory loss, and Plaintiff's RFC is supported by substantial evidence.

C. <u>The ALJ properly considered the opinion of Dr. Richeh</u>

Plaintiff claims that the ALJ failed to properly consider the opinion of Dr. Richeh because the "only reason given by the ALJ for finding the opinion of Dr. Richeh to not be persuasive is that the doctor did not indicate that she or her staff actually witnessed seizure activity." Dkt. No. 18 at 16. Plaintiff argues that the ALJ "provided no other basis for discrediting the opinion of the treating physician," and that that the opinion of the treating physician must be given more weight than the opinion of other doctors. *Id.*

The Commissioner responds by arguing that the ALJ is no longer required to give greater weight to a treating source opinion but must instead address medical opinions with five factors of persuasiveness, including supportability and consistency. *See* Dkt. No. 20 at 7–8. The Commissioner argues that the ALJ found that Dr. Richeh's opinion was not supported with objective medical evidence because it was based on Plaintiff's "subjective reporting of his symptoms, which the ALJ found to be unreliable." *Id.* at 8. Additionally, the Commissioner argues that the ALJ found that Dr. Richeh's opinion was not consistent with the record and contained inconsistent statements concerning because the frequency of Plaintiff's seizures. *Id.*

13

An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Garcia v. Berryhill*, 880 F.3d 700, 706 n.7 (5th Cir. 2018) (quoting *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)). Prior to March 27, 2017, ALJ's were required to give controlling weight to a treating physicians opinion. *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021). But, for claims filed after March 27, 2017, an ALJ "instead considers a list of factors in determining what weight, if any, to give a medical opinion." *Id.* "The most important factors for the ALJ to consider are whether an opinion is based on objective medical evidence and supporting explanations," and is consistent with "other medical and nonmedical sources" in the record. *Id.* (internal quotations omitted). When rejecting a medical source's opinion, an ALJ's explanation should show consideration of these two factors. *See id.* Some of the other factors that an ALJ may consider are the medical provider's relationship with the claimant, the length and frequency of the treatment provided, and the specialization of the medical source. 20 C.F.R. § 404.1520c.

Here, Plaintiff's argument that the ALJ erred by not giving Dr. Richeh's opinion more weight as a treating physician opinion relies upon an outdated rule. *See Webster*, 19 F.4th at 719. However, the undersigned can construe Plaintiff's claim as an argument that the ALJ committed legal error by not considering the supportability and consistency of Dr. Richeh's opinion because Plaintiff alleges that the ALJ only rejected Dr. Richeh's opinion because she, or her staff, did not witness any of the seizures.[6] *See* Dkt. No. 18 at 16.

---

[6] Although Plaintiff appears to make a legal error argument, the undersigned notes that Plaintiff purports to only argue that the decision of the Commissioner is not supported by substantial evidence. Dkt. No. 18 at 10.

Plaintiff's argument that the ALJ failed to properly consider the opinion of Dr. Richeh is without merit. The ALJ's decision addressed both the supportability and consistency of Richeh's opinion. *See* Tr. at 24–25. The ALJ expressly addressed the supportability of Dr. Richeh's opinion and concluded that the opinion was not based on objective medical evidence because it primarily consisted of Plaintiff's subjective reporting of symptoms. Tr. at 25. The ALJ reasoned that Dr. Richeh relied on Plaintiff's subjective reporting of symptoms because "Dr. Richeh did not indicate that he nor his staff actually witnessed any seizure activity." Tr. at 25. And ALJs may find that a medical opinion is not supported when it is based on "'subjective reporting rather than objective findings.'" *Saunders v. Kijakazi*, No. 1:21-CV-23-LG-MTP, 2022 WL 4476823, at \*6 (S.D. Miss. July 14, 2022), *report and rec. adopted sub nom.*, *Saunders v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4464373 (S.D. Miss. Sept. 26, 2022).

Additionally, the ALJ considered the consistency of Richeh's opinion by noting how the opinion was not consistent with other evidence in the record, such as the medical source statements made by Dr. Richeh. Tr. at 25. Specifically, Dr. Richeh's medical source statements provide that Plaintiff suffers on average three seizures a week, which is inconsistent with the notation that Plaintiff's last seizure was December 2019. Tr. at 25.

In rejecting Dr. Richeh's opinion, the ALJ's only duty was to provide an explanation demonstrating that consideration was given to the support and consistency of the opinion. Here, the ALJ's decision specifically references support and consistency involving Dr. Richeh's opinion. Thus, the ALJ properly weighed the opinion of Dr. Richeh and did not err in finding their opinion unpersuasive. *See Webster*, 19 F.4th at 719.

D. <u>There was substantial evidence to support the ALJ's step five findings.</u>

Plaintiff claims that the ALJ relied upon jobs at step 5 that are inconsistent with the Plaintiff's RFC. Specifically, Plaintiff notes that the job of mail clerk has a reasoning level of three, which creates an apparent conflict with a limitation to simple work, and "neither the ALJ nor the VE recognized such apparent conflict, nor did the ALJ resolve the conflict." Dkt. No. 18 at 17. Additionally, Plaintiff claims that that the job of office helper is inconsistent with a limitation that Plaintiff can only adapt to occasional changes in the work setting because, according to the Dictionary of Occupation Titles (DOT), the job requires "[p]erforming a variety of duties, often changing from one task to another of a different nature without loss of efficiency or composure." *Id.* at 17–19.

The Commissioner responds by arguing that Plaintiff failed to cross-examine the VE concerning the conflict regarding the reasoning level of the mail clerk position. Dkt. No. 20 at 9–10. Additionally, the Commissioner argues that the VE identified two unskilled jobs, office helper and garment sorter, with lower reasoning levels than the mail clerk position that Plaintiff can perform. *Id.* at 10. And the Commissioner claims that the ALJ properly relied on the VE's testimony that Plaintiff could perform the office helper job, despite Plaintiff's limitation to only occasional changes in the work setting, even though the officer helper position requires the performance of various duties and changing from one task to another without a loss of efficiency or composure. *See id.*

When a claimant does not have an RFC to perform previous relevant work, the claimant will be found not disabled unless the Commissioner demonstrates that claimant can perform other gainful and substantial work in the economy despite their existing

16

impairments. *Greenspan*, 39 F.3d at 236. After the Commissioner meets this burden, the claimant must prove that they cannot perform the alternate work adopted by the Commissioner. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999).

Here, it is not necessary to resolve the parties dispute concerning whether Plaintiff can perform either the mail clerk[7] or officer helper[8] position because neither party disputes whether Plaintiff can perform the garment sorter job. *See Hoelck v. Astrue*, 261 F. App'x 683, 687 (5th Cir. 2008) (holding that any error created by the ALJ in finding that claimant could perform a job that was not supported by substantial evidence "was harmless because the ALJ correctly identified, at the very least, one job that [claimant] could perform.").

The garment sorter job has a light exertional level with a reasoning level of two. Tr. at 29. The VE testified that the garment sorter position has at least 30,000 positions in the national economy. Tr. at 86. Plaintiff makes no argument that he cannot perform this job. Accordingly, Plaintiff has not met his burden of demonstrating that he cannot perform the alternate work adopted by the Commissioner. *See Crowley*, 197 F.3d at 198.

---

[7] The Court notes that the Commissioner does not appear to dispute whether the ALJ erred in finding that the Plaintiff could perform the mail clerk position. Instead, the Commissioner claims that Plaintiff waived any such argument by not cross-examining the VE regarding the reasoning level of the position at the hearing. *See* Dkt. No. 20 at 9–10. And the Commissioner is correct that the ALJ may rely upon the VE's testimony, even when an implied or indirect conflict exists between the VE's testimony and the DOT, provided that the records reflect an adequate basis for doing so. *Id.* (citing *Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir. 2000)). Here, although Plaintiff failed to cross-examine the VE at the hearing, there is nothing in the record that indicates that Plaintiff could perform jobs with a reasoning level of three when Plaintiff has been limited to performing simple, routine tasks. Thus, the ALJ's finding that Plaintiff can perform the job of mail clerk is not supported by substantial evidence.

[8] Plaintiff claims that that the job of office helper is inconsistent with a limitation that Plaintiff can only adapt to occasional changes in the work setting because, according to the DOT, the job requires "performing a variety of duties, often changing from one task to another of a different nature without loss of efficiency or composure." Dkt. No. 18 at 17–19. The VE testified that Plaintiff could perform this job after the ALJ asked the VE a hypothetical question of what jobs Plaintiff could perform jobs with a limitation to "occasional changes in the work setting." Tr. at 85–86. The Court notes that Commissioner is correct that the ALJ may rely on the VE's testimony based on a properly phrased hypothetical question. Dkt. No. 20 at 10. Here, in light of the record, the ALJ's determination that Plaintiff can perform the officer helper job, despite being limited to only occasional changes in the work setting, is supported by substantial evidence. *See Carey*, 230 F.3d at 147.

Therefore, the ALJ's step 5 determination that the Plaintiff can perform the jobs that the ALJ adopted is supported by substantial evidence.

## IV. RECOMMENDATION

For the reasons explained above, the undersigned RECOMMENDS that the decision of the ALJ be AFFIRMED. Because all parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to REASSIGN this case to Senior United States District Judge Sam R. Cummings in accordance with normal procedures.

## V. RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## VI.  TRANSFER OF CASE

The undersigned finds that the purpose for which this case was transferred to the magistrate judge docket has been served and it is ORDERED that this case is transferred back to the docket of Senior United States District Judge Sam R. Cummings and be designated as Civil Action No. 6:22-CV-00023-C.

ORDERED this 17th day of July, 2023.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE